ANNA DAVIS, RESPONDENT, v. FRANCES A. NOYES, APPELLANT.

*Statute of limitations — a new promise must recognize an existing debt — Code of Civil Procedure, sec. 395.*

The acknowledgment or promise contained in a writing, signed by the party to be charged thereby, which will take a case out of the operation of the statute of limitations, under section 395 of the Code of Civil Procedure, must recognize an existing debt and contain nothing inconsistent with an intention to pay it.

An acknowledgment by a person in writing that, because she had induced another to engage with her in the purchase of certain stock upon the prediction of a newspaper, she would make good to the other person half her loss, is not an acknowledgment which meets the requirements of said section 395.

APPEAL by the defendant Frances A. Noyes from a judgment, entered in the clerk's office of Montgomery county on the 15th day of January, 1891, in favor of the plaintiff for $919.94, after a trial before a referee.

*Orin Gambell,* for the appellant.

*Mead & Hatt,* for the respondent.

LANDON, J. :

The statute of limitations is a bar to the plaintiff's recovery unless the letters of the defendant contain an acknowledgment of the defendant's indebtedness, or a promise to pay it. (Code Civil Pro., § 395.) The writing must recognize an existing debt, and contain

nothing inconsistent with the intention to pay it. (*Manchester* v. *Braedner*, 107 N. Y., 346.)

The parties were intimate friends and were amateurs in stock speculation. On the 25th of July, 1882, the defendant had on deposit $525 with Spencer, Trask & Co., her stock brokers. On that day she called upon the plaintiff with a copy of the Wall Street News. That sheet contained an article predicting a rise in the C., C., C. and I. R. R. Co.'s stock. The parties relying upon the prediction agreed to buy together 100 shares of the stock. The defendant thereupon ordered the stock in her own name, paying $500 margin. The price of the stock kept falling and $1,300 more margin was paid, of which the defendant paid $300 and the plaintiff handed the defendant $1,000, which the defendant also applied. Whether $500 of this sum was a loan to the defendant, or whether the plaintiff contributed the whole $1,000 as margin, was in issue upon the trial and decided in favor of the plaintiff. The transaction was closed October 14, 1882, resulting in a loss of $1,000. The $800 surplus of the margin was received by the defendant, and used by her in further stock speculations upon the joint account of both parties. These further speculations do not appear to have been profitable; and although the fact is not distinctly found, the $800, and a little more, were probably lost.

The plaintiff grieved over her loss, and the defendant, in 1886, promised to pay her $500 upon account of it when she should receive her inheritance, the defendant accusing herself of blame in trusting to the misleading prediction of the Wall Street News.

Subsequently the parties engaged as partners in the millinery business in Amsterdam, N. Y. They lived in the same apartments, and it would appear that the defendant occasionally made small ventures in stock and oil speculations. August 6, 1888, they dissolved their partnership, the defendant selling out to the plaintiff, and upon a full accounting of their partnership affairs the plaintiff gave the defendant a note for $500. The plaintiff remained in Amsterdam and the defendant took up her residence in Lansingburgh. The referee found that this action was commenced more than six years after the cause of action accrued. He also found that, on the 25th of August, 1882, the plaintiff loaned the defendant $500. He did not, in terms, find that the defendant made a subsequent

promise to pay or acknowledgment of the debt, but he refused to find that she did not.

On May 10, 1889, the plaintiff wrote to the defendant: "I wish to speak to you about my note for $500, which will become due in August. You will remember that I drew $1,000 from the bank before we came to Amsterdam, and let you take it to buy C. C. C. and I—$500 for yourself and $500 for me. As you know, the whole amount was lost, and you always said that when you got your inheritance you would make your part to me good, so that the whole loss might not fall upon me, since it was through you that the money was used at all. I did not ask you to give me your note for the amount, trusting to your honor; * * * I think it would be only fair that you return me the note and we call the matter square."

The defendant replied the same day: "Your letter has this moment arrived and I am more than surprised at the contents. * * * Stunned to death as I am, I still say you may indeed count upon my honor; that will never fail, and I should comply at once with your request and send you the note, only that I am wholly unable to do so at present. * * * I will do just as I said regarding half of the three C's money, although I hold myself by every method of reason and argument wholly free."

May 11, 1889, the plaintiff writes: "I don't know what method of reasoning you use to argue yourself wholly free about the three C's money."

May 12, 1889, the defendant writes: "As to the three C's money, you know it was never thought of as a loan, consequently the idea of a note never entered into the arrangement; I was taking the Wall Street News and we were dealing in stocks. * * * When I brought the paper down to you we both felt impressed with it. I grant I made the proposition, * * * and as it was my proposition, I made the offer of my own free will, and I never go back on my word, so I am just as determined as ever to carry out my proposed plan and pay one-half of that loss."

Under date of May 16, 1889, defendant writes: "As to the three C's it is a debt of honor and shall be paid." And under date June 3, 1889, first stating that she had found the broker's letter and a memorandum of her own, defendant writes: "Referring again to

the three C's,  *  *  *  I find it went out on a stop at 75; that
when the market continued dropping I put on 100, then 300 that I
borrowed from Judge PARMALEE, and after that 200 of store money
and then let it go.   So you see that when I have paid you 500, as
one-half of your 1,000, that my loss will be 1,100 to your 500.   Now
I am not finding fault, neither do I wish to be excused from paying
you what has been agreed upon."

The correspondence from which the above extracts are made is
voluminous.   Other extracts could be added of the like purport.

The letters speak for themselves.   No reference to oral testimony
is necessary further than to enable us to understand what is the
subject-matter treated upon.   The meaning of the letters is not
affected by the referee's finding that the $500 was a loan.   We are
to construe them in the sense in which the defendant wrote them.
They are unmistakably to the effect that the defendant did not
borrow the $500.   The letters repudiate that claim, but they con-
tain her acknowledgment, that because she had induced the
plaintiff to engage with her in the purchase of the stock upon the
prediction of the Wall Street News she would make good to her half
of her loss; that was what she had said and agreed to, and still
meant to do.   Such an acknowledgment does not meet the require-
ments of the statute.

The judgment is reversed, referee discharged, new trial granted,
costs to abide the event.

The defendant made a motion for a new trial upon newly dis-
covered evidence.   The motion was denied, and the defendant
appealed, and that appeal is also before us.

We affirm that order, with costs.

LEARNED, P. J., and MAYHAM, J., concurred.

Order denying motion for new trial on newly discovered evidence
affirmed, with costs.   Judgment reversed, referee discharged, new
trial granted, costs to abide event.